1

2

3

4

5

6

7

8             # UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10   PAULA MARIE KENNEDY,              )   1:08-cv-00308-OWW-GSA
                                       )
11               Plaintiff,            )   FINDINGS AND RECOMMENDATIONS
                                       )   REGARDING PLAINTIFF'S SOCIAL
12        v.                           )   SECURITY COMPLAINT
                                       )
13   COMMISSIONER OF SOCIAL            )
     SECURITY,                         )
14                                     )
                                       )
15               Defendant.            )
                                       )
16   _____ )

17                       **BACKGROUND**

18        Plaintiff Paula Marie Kennedy ("Plaintiff"), appearing pro se, seeks judicial review of a

19   final decision of the Commissioner of Social Security ("Commissioner") denying her application

20   for disability insurance benefits and supplemental security income pursuant to Titles II and XVI

21   of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

22   were submitted without oral argument, to the Honorable Gary S. Austin, United States

23   Magistrate Judge, for findings and recommendation to the District Court.

24   //

25   //

26   //

27   //

28   //

                                1

## FACTS AND PRIOR PROCEEDINGS[1]

In April 2003, Plaintiff filed applications alleging disability since August 9, 2001.  AR 108-10.  Her applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 36-40, 41, 42-46, 47.  ALJ Peter F. Belli[2] held hearings on March 23, 2004 (AR 545-51), January 13, 2005 (AR 552-73) and June 15, 2005 (AR 574-89), and issued an order denying benefits on April 3, 2006.  AR 21-31.  Thereafter, on November 2, 2007, the Appeals Council denied review.  AR 9.

Hearing Testimony[3]

Plaintiff was born in Mississippi on August 9, 1967.  She graduated high school and has attended college classes.  She completed a certificate in training related to real estate, however, she did not pass the examination necessary to obtain a license.  AR 558-59.  Plaintiff lives in a Modesto home with three of her children, ages twenty, nineteen and thirteen.  AR 558.

Plaintiff was last employed as a banquet server in 2001, but sustained an injury on June 12, 2001, and as a result of the injury, could no longer perform her duties.  She last worked on August 9, 2001, and indicated it was because her doctor "released [her] from [her] job."  AR 560.

Prior to working as a banquet server for seven and a half years, Plaintiff was employed as a teller at a credit union in Alameda.  AR 560.  She indicated she could no longer work as a teller or cashier because she is unable to sit or stand for more than fifteen to twenty minutes at a time.  Additionally, Plaintiff is still trying to recover from her injury and is "still in a lot of pain."  AR 560-62.

At five feet, four inches tall, Plaintiff weighs 170 pounds.  She denied smoking or drinking alcoholic beverages of any kind.  AR 562-63.  She believed it had been a "couple

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2]The transcripts of the hearing proceedings in this matter refer to the ALJ as "Peter Bailey."  *See* AR 545, 552, 574.  However, the Court refers to ALJ Belli in light of his name and signature as reflected in the decision dated April 3, 2006.

[3]At the hearing scheduled for March 23, 2004, Plaintiff's counsel requested a continuance and the matter was postponed.  AR 547-550.

months" since she had last cooked anything other than "an egg sandwich with some bacon." Her children or her fiancee will cook or prepare meals for her. If neither the children nor her fiancee are available, she will make a sandwich for herself. AR 563. The laundry is handled by the children and she does not help them with it. AR 563. She last did laundry prior to her surgery. AR 564.

Exercise is not an option for Plaintiff because she is "very limited [in her] movements." AR 564. She is able to bathe and dress herself, and complete necessary personal hygiene without assistance. AR 565.

When grocery shopping, Plaintiff is accompanied by another. She does not push the cart, but walks around the store for "[t]hirty minutes tops" and shops for a month's worth of groceries at one time. She uses a list and gets the same items every month, and shops early in the morning. AR 568-69.

Plaintiff is treated by Frank Fine, M.D. She last saw Dr. Fine on January 5, 2005. Dr. Remington[4] performed her surgery and she last saw him in November. She testified that she followed Dr. Remington's instructions, but acknowledged she did not do aerobic exercise for forty-five to sixty minutes, four to five times per week, as recommended. AR 564. She stated that she tried to do so, but it was "just too painful." AR 564.

Although she has a valid California driver's license, and acknowledged driving the day prior to the hearing, Plaintiff indicated she drives only when she has a medical appointment. Her thirteen-year-old daughter walks to school. AR 566. When driving, she is able to turn the steering wheel and operate the foot pedals, and enter and exit the vehicle. AR 566-67.

Plaintiff underwent back surgery on August 5, 2004. AR 567. After surgery, Plaintiff used a walker, but she no longer needs the assistance of the walker. She does have a back brace she was provided after surgery and she continues to use it. AR 567-68.

Typically Plaintiff goes to bed at about 10 or 10:30 in the evening. If she does not have to go anywhere the next morning, she does not get out of bed until 11:00 a.m. Between the time

---

[4]The transcript of the hearing actually reads "Dr. Wellington," however, a review of the medical records indicates the surgeon was in fact Dr. Benjamin J. Remington.

3

she retires and arises in the morning, she will get out of bed about four times, either to use the restroom or to take her medications.  AR 569.

Plaintiff's current medications include Darvocet, Oxycontin, Wellbutrin and Ambien, as well as a medication for high blood pressure.  AR 569-70.

With regard to her depression, Plaintiff is treated by Dr. Frank Fine.  She does not see a psychiatrist or psychologist for treatment because "[w]orkman's comp wouldn't authorize it." AR 570.  She believes she should be under the care of a psychiatrist or psychologist because she is depressed, and it could affect her ability to work.  She is unhappy with herself and did consider taking her own life once, following the surgery.  AR 570-71.

In light of Plaintiff's testimony regarding her depression, the ALJ stopped the January 13, 2005, hearing and referred Plaintiff for psychological testing.  AR 571-72.  On June 15, 2005, proceedings resumed following a completed psychological evaluation.  AR 576.

Plaintiff indicated that she suffers side effects from the medications she is prescribed. She is drowsy and sometimes dizzy.  AR 578.  She believes the Oxycontin makes her dizzy, and has been taking it since January or February.  Although she has seen her physician five or six times since he prescribed the Oxycontin, she has not asked him to change the medication due to the side effect because it does "take [her] pain away."  AR 578-79.  Darvocet will sometimes make her drowsy, but she has not asked her physician to discontinue use of that drug either because it is "helping [her] a little bit."  AR 579-80.

VE Susan Moranda[5] summarized Plaintiff's work history as follows: (1) 1994 through 2001, banquet server - classified as kitchen help, medium exertion, unskilled; and (2) 1989 through 1991, bank teller - classified at lower skill level, light exertion.  The VE also testified that Plaintiff's job duties from 1994 through 2001 could also have been considered a banquet waitress, classified as light exertion and semi-skilled, with a DOT code of 311.477-026.  AR 581.

---

[5]The VE's surname is spelled "Miranda" in the hearing transcript.  Nevertheless, the correct spelling is found on her resume and related documents at pages 105 through 107 of the administrative record.

4

The VE was asked to consider an individual of Plaintiff's age, education, and work history, who could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, who could sit for eight hours in an eight-hour workday with normal breaks, requiring change of position at will, and whom could stand and walk six hours in an eight-hour workday with normal breaks, limited to occasional stooping, crouching, crawling and kneeling. Additionally, the individual had no limitations regarding the ability to understand, remember or carry out simple job instructions, with a limitation of greater than mild but less than marked with regard to detailed job instructions, an unlimited ability to make judgments on simple work related matters, with a limitation of greater than mild but less than marked with regard to detailed work related decisions, and similar limitations regarding the ability interact with supervisors and the public. AR 582-83.  VE Moranda concluded that, given the limitations provided in the hypothetical, such an individual could perform Plaintiff's past work as a banquet waitress.  Such an individual could also perform the duties of a teller and a banquet server.  AR 583-84.

Additionally, the VE identified three other jobs within the national economy that this hypothetical individual could perform: (1) small parts assembler, light exertion, unskilled; (2) cashier 2, light exertion, unskilled; and (3) general office helper, light exertion, unskilled.  There are approximately 97,000, 85,000, and 17,000 persons employed in those occupations, respectively, in the State of California.  AR 584.

Plaintiff's counsel asked the VE to assume an individual of Plaintiff's age, education and work experience, and similar limitations to those listed above, except that the individual has a moderate limitation regarding the ability to understand and remember detailed instructions, and moderate limitation regarding the ability to respond appropriately to work pressures and changes in routine work setting, where "moderate limitation" means "[m]ore than mild and less than marked."  The VE responded that if the "moderate limitation" posed by Plaintiff's counsel interfered with concentration, persistence and pace, then the individual could not perform Plaintiff's past work.  AR 584-85.

The VE was also asked to assume an individual of Plaintiff's age, education and work experience, whom was only able to sit, stand, and walk without interruption for one hour in an

eight-hour workday.  VE Moranda testified that such an individual would be unable to perform any job.  AR 586.

Medical Record

The entire record was reviewed by the Court, however, only those portions relevant to the instant proceedings are briefly summarized below.

On June 12, 2001, Plaintiff was seen at Memorial Medical Center ("MMC") in Modesto after tables fell on her while she was at work.  She complained of back, neck and right hip pain.  Some tenderness was reported in the neck and L1 area, and right iliac crest.  Vicodin and Valium were administered.  X-rays of the c-spine, lumbar spine and pelvis and hip were taken.  AR 279-87.  The lumbar spine x-ray shows no fractures, and alignment and intervertebral disc spaces were normal, and the sacroiliac joint was intact.  AR 288.  The cervical spine x-ray found no fracture or prevertebral soft tissue swelling.  There was no acute traumatic bony abnormality noted.  AR 289.  An x-ray of the thoracic spine revealed no fracture or paravertebral soft issue swelling.  No other abnormality was noted.  AR 291.  An x-ray of the right hip revealed no fracture or traumatic abnormality.  AR 290.

On November 14, 2001, Danilo Martinez, M.D., provided an evaluation of Plaintiff.  Plaintiff reported that her neck pain had improved, but her lower back pain remained constant and was aggravated by standing and sitting too long, or walking more than ten to fifteen minutes.  AR 228.  The neuromuscular examination revealed Plaintiff was in no acute distress.  She was pleasant and cooperative.  She measured five feet, five inches tall, and weighed 277 pounds.  AR 228.  There were no muscle spasm in the spine, yet limitation was noted with extension.  A foraminal compression test was negative.  AR 228-29.  The examination of the lumbar spine revealed no deformities, yet tenderness was present.  Extension was "nil" yet side flexion and rotation were normal.  AR 229.  An examination of extremities showed no motor impairment.  A sensory examination revealed "patchy decreased sensation."  Dr. Martinez diagnosed cervical strain, lumbosacral strain, degenerative lumbar disc disease L3-4 and L5-S1, and discrete central disc protrusion at L5-S1.  AR 229.  There was no evidence of cervical or lumbar radiculopathy, and no indication of the need for spine surgery.  *Ibid*.

On July 16, 2002, Plaintiff was seen at MMC for back spasms and ongoing back pain. Medication, including Valium, was administered and she was released feeling better. AR 241-48.

On July 23, 2002, Plaintiff was again seen at MMC for back pain with spasms and left leg pain. Medications were given and she was discharged a short time later. AR 237-39.

On September 4, 2002, Plaintiff was examined by Jeffrey T. Holmes, M.D., an orthopedic surgeon, for a Qualified Medical Evaluation. Plaintiff's complaints included "'sharp, aching, pulsing, severe, burning, stabbing, pinching, piercing, grabbing, intense, needlelike'" pain radiating down both legs "'all the time.'" AR 302. She described her pain on a scale of one to ten "as a 'two' increasing to a 'ten.'" AR 302. Plaintiff complained her sleep was affected by the pain, that she could carry no more than five pounds without the weight increasing her pain. She could not sit more than twenty-five minutes, or walk or stand more than fifteen minutes. AR 302. Dr. Holmes's physical examination noted squatting at forty percent of normal with complaints of pain in the lumbar spine (AR 304), tenderness in the paraspinal muscles and sacroiliac joints, range of motion forty percent of normal as to flexion, and eighty percent of normal as to left and right lateral bending and rotation (AR 305), and sensation was decreased in the lower extremities (AR 306). Other findings were normal. Dr. Holmes's impression was lumbar spine strain with lumbar disc disease and bilateral lower extremity sciatica, and left shoulder contusion, resolved. AR 307. Dr. Holmes identified work restrictions, in light of objective and subjective factors, as precluding heavy lifting, and repeated bending and stooping. AR 308. He recommended chiropractic treatment and prescription medications. AR 308.

On or about September 18, 2002, Plaintiff saw Jim D. Emery, M.D. His examination revealed significant tenderness in the lower back and decreased range of motion. Additionally, Plaintiff had weakness in the dorsiflexors of her left foot and a positive straight leg test on the left at sixty degrees. She complained of tingling intermittently. Dr. Emery's impression was an L5 radiculopathy; he recommended an MRI and neurosurgical consult. AR 322-23.

An October 9, 2002, MRI of the lumbar spine revealed no abnormality at L1-2, L2-3. At L3-4 mild disc dehydration was noted, at L4-5 minimal disc hydration was noted anteriorly, and

at L5-S1 minimal discogenic disease with mild broad based disc bulging minimally narrowing the canal just abutting the thecal sac and mild facet degenerative changes were noted.  AR 317.

On April 28, 2003, Blaine H. Johnson, M.D., prepared a report following a Qualified Medical Evaluation he performed on March 28, 2003.  He reported Plaintiff's symptoms as expressed, reviewed medical records, and performed a physical examination.  Dr. Johnson noted a slight degree of loss of normal lordotic curve on examination, with weight bearing somewhat sparing at the left leg.  Plaintiff performed the heel to toe walk without difficulty.  She could squat to approximately thirty degrees of knee flexion before feeling low back pain.  No muscle spasm was noted, but tenderness was present over the paraspinous muscles, lumbosacral region and buttocks.  The tenderness extended down her left thigh and into the calf and heel.  The sacroiliac joint region was tender for pain as well.  Range of motion of the back revealed five degree extension causing back pain.  Flexion to forty-five to fifty degrees before back pain, and lateral bending to twenty degrees on the left and fifteen degrees on the right.  Rotation also produced some pain.  Straight leg raising produced mild symptoms of low back pain. Straight leg raising in the seated position increased pain. AR 407-08.  Muscle strength was slightly diminished in the left foot.  Range of motion in the hips produced some pain on the left.  Hip strength was diminished and suspected of causing her significant discomfort.  Dr. Johnson diagnosed chronic lumbosacral sprain/strain with slight herniated disc at L5-S1, chronic lumbosacral sprain/strain and left leg sciatica.  AR 410.

A report dated June 18, 2003, by Benjamin J. Remington, M.D., revealed tenderness to the back with good range of motion on examination, yet accompanied by pain.  Her lower extremity bilateral strength was 5/5.  Decreased sensation was noted in the left lower extremities.  Negative straight left leg raise was noted, as was a slow and painful gait.  Plaintiff was able to heel and toe walk without great difficulty.  Dr. Remington noted that it was possible that the degenerative disc disease at L5-S1 was the source of all symptoms. He recommended a discogram at L3-4, L4-5, and L5-S1.   AR 372-73.

A Residual Functional Capacity Assessment was prepared by David Pong, M.D., on June 23, 2003.  Dr. Pong determined Plaintiff could occasionally lift and carry twenty pounds,

8

frequently lift and carry ten pounds, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday with ten to fifteen second change of position breaks while seated.  Plaintiff was not limited regarding pushing or pulling.  AR 375.  She could occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 376.  Dr. Pong identified no limitations with regard to manipulation or vision, communication, or environment.  AR 377-78. The doctor opined Plaintiff's symptoms were attributable to her impairment, yet the severity and duration were disproportionate to that expected.  He expressly noted the MRI findings were rather "mild."  AR 379.  Dr. Pong found Dr. Fine's findings too restrictive given the mild MRI findings, and found Plaintiff capable of light work with brief changes in position.  AR 380.

A July 8, 2003, bone scan was normal.  AR 439.

On September 30, 2003, Dr. Johnson prepared a follow up report following re-evaluation of Plaintiff on September 16, 2003.  He diagnosed chronic lumbosacral sprain/strain, chronic sacroiliac sprain/strain, and degenerative disc disease most prominent at the L3-4 and L5-S1.  He precluded Plaintiff from heavy work.  AR 412-22.

A CT Discogram of January 13, 2004, revealed disc degeneration at L5-S1 with associated small broad based protrusion slightly flattening the anterior thecal sac, and linear defect in the annular fibers on the right at L4-5 with associated subligamentous contrast without frank extravasation.  AR 440.

Discography at the L3-L4, L4-L5 and L5-S1 levels was performed on or about January 13, 2004, by James Barnett, M.D.  AR 425-27.

On March 22, 2004, Frank Fine, M.D., prepared a Complete Medical Report Physical regarding Plaintiff.  He indicated a treatment history of February 3, 2003, through February 18, 2004.  AR 441.  Dr. Fine indicated Plaintiff could occasionally lift and carry up to ten pounds, and could sit, stand and walk one hour each without interruption in a total eight-hour workday. No medical findings in support were noted.  Dr. Fine indicated Plaintiff could occasionally climb, stoop, crouch, kneel and crawl, and could frequently balance.  She could occasionally push or pull.  AR 442-44.  He did not identify any environmental restrictions.  AR 445.

//

On August 5, 2004, Plaintiff underwent L5-S1 fusion by Dr. Remington.  AR 467-69.

A September 27, 2004, x-ray of the lumbar spine revealed no changes to the anterior fusion at L5-S1, and no disk degeneration.  AR 492.

An October 28, 2004, x-ray of the lumbar spine revealed a "greater amount of bridging graft material between the anterior endplate of L5 and the bone graft.  Osteotomy lines are not visible, suggesting bony fusion."  The impression was the findings were consistent with ongoing fusion at L5-S1.  AR 493.

Stable post-operative changes at L5-S1 were noted on February 25, 2005.  AR 528.

On March 16, 2005, Plaintiff underwent a Psychological Disability Evaluation. Behavioral observations and mental status examination revealed, in pertinent part, clear and coherent speech, logical and linear thought process, and no delusion, hallucination or other thought disorder was identified.  Mood was mildly depressed.  AR 504.  During testing Plaintiff was cooperative and displayed adequate effort.  Auditory and visual memory skills were normal. Remote memory was intact; short term memory was poor.  AR 504-05.  Difficulty occurred in calculating simple math problems and answering questions that required abstract reasoning.  A full scale IQ of 78 was recorded.  The MMPI-I was positive for significant levels of anxiety and depression relating to her physical condition and pain.  AR 505.  Mild impairment was noted regarding concentration and attention.  AR 505.  The diagnostic impression was adjustment disorder with depressed mood at Axis I.  Plaintiff was able to understand, remember and carry out simple and uncomplicated one or two-step instructions; she had difficulty with detailed or complex instructions due to poor concentration.  She was able to interact appropriately with the examiner and demonstrated cognitive ability to manage her finances.  AR 506.

A June 27, 2005, MRI of the lumbar spine noted the stable appearance of the fusion.  AR 527.

A September 12, 2005, MRI noted "central bone fusion in fusion devices at the L5-S1 which may have made fusion with the opposing vertebral body endplates, however, no other bony fusion has occurred between L5 and S1."  AR 526.

//

1      A January 3, 2006, MRI was negative for change post lumbar fusion.  AR 525.

2      A CT scan of the lumbar spine of January 17, 2006, noted small bulges, including no

3  change to the small bulge at L4-5 with associated minimal encroachment in the inferior aspects

4  of the neural foramina, no evidence of loosening or infection at the plate, bone graft material in

5  proper placement within the disc space at L5-S1, and no evidence of resorption or infection.  AR

6  533-34.

7      On November 13, 2006, Dr. Fine prepared another Complete Medical Report Physical

8  regarding Plaintiff.  He indicated a treatment history of February 3, 2003, through November 9,

9  2006.  AR 535.  The doctor indicated Plaintiff could occasionally lift and carry up to ten pounds,

10  and could sit, stand and walk two hours each without interruption in a total eight-hour workday.

11  Dr. Fine indicated Plaintiff could occasionally climb, stoop, crouch, kneel and crawl, and could

12  frequently balance.  She could occasionally push or pull.  AR536-38.  He did not identify any

13  environmental or manipulative restrictions.  AR 539.

14      **ALJ's Findings**

15      The ALJ determined that Plaintiff has the severe impairments of status post L5-S1

16  anterior interbody fusion with synthes ADD plate residuals.  Nonetheless, the ALJ determined

17  the severe impairment did not meet or equal any listing impairment so as to result in a disability

18  finding.  AR 23, 30.

19      Based on his review of the medical evidence, the ALJ determined that Plaintiff retained

20  the residual functional capacity ("RFC") to perform light exertional work.  AR 30.

21      Given this RFC, the ALJ found that Plaintiff could not return to her past semi-skilled

22  work, but that she could perform the full range of light work.  Thus, the ALJ determined Plaintiff

23  was not disabled.  AR 30-31.

24      **SCOPE OF REVIEW**

25      Congress has provided a limited scope of judicial review of the Commissioner's decision

26  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

27  the Court must determine whether the decision of the Commissioner is supported by substantial

28  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

1    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

2    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

3    reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

4    401. The record as a whole must be considered, weighing both the evidence that supports and

5    the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

6    995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

7    apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

8    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

9    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

10   substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

11   Cir. 1987).

12                                              **REVIEW**

13           In order to qualify for benefits, a claimant must establish that he is unable to engage in

14   substantial gainful activity due to a medically determinable physical or mental impairment which

15   has lasted or can be expected to last for a continuous period of not less than twelve months. 42

16   U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

17   such severity that he is not only unable to do her previous work, but cannot, considering his age,

18   education, and work experience, engage in any other kind of substantial gainful work which

19   exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

20   The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

21   Cir. 1990).

22           In an effort to achieve uniformity of decisions, the Commissioner has promulgated

23   regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

24   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). This five-step analysis can be summarized as

25   follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so

26   engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in

27   substantial gainful activity, determination of whether the claimant has a severe impairment; if

28   not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe

impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations; if so, the claimant is disabled and the analysis ends; (4) if the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work; if not, the claimant is not presumed disabled and the analysis ends; and (5) if the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the analysis ends.

Here, Plaintiff appears to argue that (1) her depression was not properly considered by the ALJ, (2) the ALJ erroneously determined that she had not engaged in substantial gainful activities since the disability onset date, (3) the ALJ erred in his pain and credibility findings, and (4) the ALJ's finding is not supported by substantial evidence.  (Doc. 17.)

## DISCUSSION

### A.    *Plaintiff's Depression*

Plaintiff complains that she is clinically depressed, and that she struggles on a daily basis with depression.  Prior to her accident, she was a very social person, yet now everything is affected by how she feels when she wakes up in the morning.  (Doc. 17 at 5-8.)  The Commissioner contends the record does not contain any opinion of a disabling mental or emotional limitation, and indicates that the ALJ properly relied upon the opinion of Dr. Weiss. (Doc. 18 at 9.)

The ALJ found as follows:

> The claimant underwent a Psychological evaluation with testing on March 16, 2005.  It was noted that she has not participated in outpatient psychotherapy no[r] reported any history of psychiatric hospitalizations.  She still takes Wellbutrin prescribed by Dr. Fine six months ago for symptoms of her depression which she stated has helped; Ambien for sleep; and OxyContin and Darvocet for back pain.  Her mood was mildly depressed . . .. [T]hought process logical and linear, no delusions, and no hallucinations or other signs of thought disorder. . . . Full Scale IQ of 78 . . .. [S]ignificant levels of anxiety and depression with significant concerns with her physical condition and experiencing lo[ts] of pain. Concentration/attention skill was impaired as was personality testing but was consistent with an individual experiencing significant levels of anxiety and depression, both related to physical concerns.  She was able to understand, remember and carry out at least simple and uncomplicated one or two-step instructions; able to interact appropriately with the examiner, and demonstrated the cognitive ability to manage her finances [citation]. . . . moderate impairment in

> understanding, remembering, and carrying out detailed instructions; slight limitation in interacting appropriately with the public, supervisors and co-workers, and moderate limitation in responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting.

AR 27.  The ALJ also noted

> although she did not initially allege depression, claimant now alleges depression (no State Agency Medical Consultant PRT).  The undersigned concurs with findings of the Psychologist [citation] that this depression/anxiety is related to her physical impairments and do[es] not erode her mental ability to perform work activities at the light residual functional capacity level with limitations as indicated by her treating physician Dr. Fine [citation], and the State Agency Medical Consultant's residual functional capacity assessment [citation].

AR 29.

A mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.  Symptoms are a claimant's own description of his or her impairment, and alone are not enough to establish a mental impairment; signs include observable psychological abnormalities and must be medically demonstrable phenomena;  laboratory findings must be shown through medically acceptable laboratory techniques.  20 C.F.R. § 416.928.  The regulations are clear that reports about a claimant's impairments must come from "acceptable medical sources," and that a licensed social worker is not an accepted medical source.  20 C.F.R. § 416.913(a).     To determine whether a plaintiff has a mental impairment, one must assess the impairment according to the Regulations.  20 C.F.R. pt. 404, app. 1, subpt. P, § 112.05 (Listing 12.05).  The listing of impairments outlines criteria that claimants must meet in order to be determined impaired.  *Id.*  Listing 12.04 pertains to affective disorders.[6]

---

[6]Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or

1    Here, the ALJ acknowledged the treatment records from Dr. Fine and the evaluation

2   prepared by Dr. Weiss.  The ALJ noted however that the limitations imposed by Plaintiff's

3   depression did not significantly affect her ability to perform light work.  AR 29.

4    It appears that Plaintiff suffers from depression.  However, a review of the medical

5   records pertaining to Plaintiff's mental health reveals that Plaintiff does not suffer from at least

6   four of the impairments identified in subdivision (A) of Listing 12.04, nor has any physician

7   indicated that Plaintiff has been markedly affected as identified in subdivision (B) of Listing

8   12.04.  Dr. Weiss's examination revealed that Plaintiff speech and thought processes were

9   normal, her mood was mildly depressed, yet she suffered from no delusion, hallucination or other

10   thought disorder.  She was mildly impaired in concentration and attention, and was able to

11   _____

12            f. Feelings of guilt or worthlessness; or
             g. Difficulty concentrating or thinking; or

13            h. Thoughts of suicide; or
             i. Hallucinations, delusions, or paranoid thinking; or

14            2. Manic syndrome characterized by at least three of the following:
             a. Hyperactivity; or

15            b. Pressure of speech; or
             c. Flight of ideas; or

16            d. Inflated self-esteem; or
             e. Decreased need for sleep; or

17            f. Easy distractibility; or
             g.  Involvement in activities that have a high probability of painful consequences which

18            are not recognized; or
             h. Hallucinations, delusions or paranoid thinking; or

19            3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic
    picture of both manic and depressive syndromes (and currently characterized by either or both

20    syndromes);
    AND

21            B. Resulting in at least two of the following:
             1. Marked restriction of activities of daily living; or

22            2. Marked difficulties in maintaining social functioning; or
             3. Marked difficulties in maintaining concentration, persistence, or pace; or

23            4. Repeated episodes of decompensation, each of extended duration; or
    OR

24            C. Medically documented history of a chronic affective disorder of at least 2 years'
    duration that has caused more than a minimal limitation of ability to do basic work activities, with

25    symptoms or signs currently attenuated by medication or psychosocial support, and one of the
    following:

26            1. Repeated episodes of decompensation, each of extended duration; or
             2. A residual disease process that has resulted in such marginal adjustment that even a

27    minimal increase in mental demands or change in the environment would be predicted to cause the
    individual to decompensate; or

28            3. Current history of 1 or more years' inability to function outside a highly supportive
    living arrangement, with an indication of continued need for such an arrangement.

understand, remember and carrying out simple instructions, and could interact appropriately with others. These mild impairments do not significantly affect Plaintiff's ability to perform light work. The record is devoid of any physician finding Plaintiff impaired to the degree required by the Listing. Plaintiff's symptoms alone are not sufficient to establish a mental impairment.

Moreover, a careful review of Dr. Fine's treatment notes does not establish that Plaintiff's depression severely impairs her ability to perform light work. *See* AR 383-98, 431-38, 451-53, 510-22, 535-39.

The ALJ did not err as his finding is based on substantial evidence.

**B.      *Substantial Gainful Activity***

Plaintiff appears to allege error by the ALJ wherein he found she had *not* engaged in substantial gainful activity from the onset disability date. More specifically, Plaintiff states that the ALJ's determination that she was not engaged in substantial gainful activity is "untrue and I am able to prove it." (Doc. 17 at 6-7.) Defendant does not address this issue.

Because it is clear that Plaintiff, appearing pro se, did not intend to argue against herself, this Court will disregard Plaintiff's argument regarding substantial gainful activity. In other words, because the five-step process an ALJ must perform *requires* the ALJ to find a claimant has not engaged in substantial gainful activity since the alleged onset of disability at step one, to argue such a finding was error would entirely defeat Plaintiff's disability claim. *See* 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994) (step one requires a determination of whether the claimant is engaged in substantial gainful activity; if so engaged, the claimant is not presumed disabled and the analysis ends).

In substance, it is clear Plaintiff did not intend to bolster Defendant's case. Rather, she intended to offer support of her own position, and for that reason, this argument is disregarded by the Court.

**C.      *Pain and Credibility Findings***

Plaintiff contends she is in pain and cannot return to the workforce, and that the medical record establishes this fact. (Doc. 17 at 8-10.) Defendant contends the ALJ properly considered Plaintiff's medications and allegations of disabling subjective symptoms. (Doc. 18 at 9-11.)

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or
> other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th
> Cir.1989).  However, to discredit a claimant's testimony when a medical
> impairment has been established, the ALJ must provide "'specific, cogent reasons
> for the disbelief.'"  *Morgan*, 169 F.3d [595,] 599 [(9th Cir. 1995)] (quoting *Lester
> [v. Chater]*, 81 F.3d [821,] 834 [(9th Cir. 1995)]).  The ALJ must "cit[e] the
> reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the
> ALJ did not find "affirmative evidence" that the claimant was a malingerer, those
> "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*
> Social Security Administration rulings specify the proper bases for
> rejection of a claimant's testimony. . ..  An ALJ's decision to reject a claimant's
> testimony cannot be supported by reasons that do not comport with the agency's
> rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have
> the same force and effect as the statute or regulations, they are binding on all
> components of the Social Security Administration, ... and are to be relied upon as
> precedents in adjudicating cases.");  *see Daniels v. Apfel*, 154 F.3d 1129, 1131
> (10th Cir.1998) (concluding that ALJ's decision at step three of the disability
> determination was contrary to agency regulations and rulings and therefore
> warranted remand).  Factors that an ALJ may consider in weighing a claimant's
> credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or
> inadequately explained, failure to seek treatment or follow a prescribed course of
> treatment."  *Fair*, 885 F.2d at 603; *see also Thomas [v. Barnhart]*, 278 F.3d
> [947,] 958-59 [(9th Cir. 2002)].

*Orn,* at 635-36.

The ALJ is required to make specific findings assessing the credibility of plaintiff's

subjective complaints.  *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738

(9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other

non-exertional impairment," *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).  In rejecting the

complainant's testimony, "the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

1995) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The

1  ALJ may consider at least the following factors when weighing the claimant's credibility:

2  '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

3  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

4  testimony from physicians and third parties concerning the nature, severity, and effect of the

5  symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,

6  792 (9th Cir. 1997)).  "If the ALJ's credibility finding is supported by substantial evidence in the

7  record, we may not engage in second-guessing."  *Id.*

8      Here, the ALJ found, in pertinent part, as follows:

9          The claimant testified that her medications; OxyContin, Darvocet, and
Soma cause side effects of dizziness and drowsiness.  . . .  The undersigned
10  inquired of the claimant the number of times she visited her physician since the
medications had been prescribed and she replied about 5-6 times.  He then asked
11  her the number of times she asked to have the medications changed; no reply
instead she stated that the combination of the medications give her relief.  The
12  undersigned then asked if she discussed with her physician that the pain
medication makes her drowsy and she said no.  When asked why not she replied
13  that she would rather have the side effects than the pain.
        The undersigned found the claimant's testimony not fully credible.
14  Indeed, the undersigned questions her testimony that she prefers suffering from
side effects than discussing and requesting a change of medication to one without
15  those side effects or even some over-the-counter medication.  Although the
undersigned is aware of the voluminous medical records in support of a severe
16  impairment, the undersigned is not persuaded regarding her burden of proof that
she is disabled and precluded from performing work at any exertional level.  The
17  undersigned is further un-persuaded that a preponderance of the objective clinical
evidence supports a finding of disability.

18  

19  AR 28 (grammar & punctuation marks in original).  The ALJ was not required to accept

20  Plaintiff's testimony as a whole.  *Orn v. Astrue*, 495 F.3d at 635.  In fact, the ALJ stated Plaintiff

21  was "not fully credible" (AR 29), inferring he must have accepted some portion of her testimony

22  as credible.  The ALJ also relied upon the available objective clinical evidence and determined

23  that it did not support Plaintiff's testimony.  Moreover, the ALJ's reasons for his finding are

24  specific and cogent.  *Orn*, at 635; *see also Lester v. Chater*, 81 F.3d at 834.  He explained what

25  testimony offered by Plaintiff was not credible and what evidence he relied upon for his

26  conclusion.  His reasons are clear and convincing, and not arbitrary.  *Lester v. Chater*, 81 F.3d at

27  834; *Thomas v. Barnhart*, 278 F.3d at 958.

28  //

18

To the degree Plaintiff's challenges the ALJ's consideration of the side effects of the medications she is prescribed, he is required to consider those side effects. *Erickson v. Shalala,* 9 F.3d 813, 817-18 (9th Cir. 1993).

The ALJ's pain and credibility determinations were based on substantial evidence and are free of legal error.

**D.    *Substantial Evidence***

Plaintiff challenges the ALJ's findings that she is not disabled. (Doc. 17.) Defendant counters that substantial evidence supports the ALJ's determination, and thus his finding of non-disability is free of legal error. (Doc. 18 at 7-9.)

A plaintiff bears the burden of proving that he or she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

Courts do not have the responsibility for weighing the evidence and resolving conflicts therein; rather, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.*

ALJ Belli found Plaintiff capable of light work, or the ability to lift, carry, push and pull twenty pounds occasionally and ten pounds regularly, with change of position at will, the ability to stand, walk and sit six hours in an eight-hour workday, with the exception of climbing ladders, ropes, or scaffolds, permitting occasional stooping, crouching, crawling or kneeling, with more than mild but less than marked limitations regarding her ability to follow detailed job instructions and respond appropriately to work pressures, and mild limitations regarding interaction with others. AR 28-29. The ALJ's determination was based on the VE's testimony at the administrative hearing and the medical record. The VE testified that Plaintiff was capable of

1   light work, including her past work and additional jobs such as small parts assembler, general

2   office helper and cashier II.  AR 28-29, 581-86.  An ALJ may take administrative notice of any

3   reliable job information, including information provided by a VE.  *Bayliss v. Barnhart*, 427 F.3d

4   1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995)).  A

5   VE's recognized expertise provides the necessary foundation for his or her testimony.  *Id.*  The

6   ALJ could, and did, properly rely on the VE's testimony.

7          The opinions of Drs. Fine, Pong and Weiss support the ALJ's determination.  Dr. Fine's

8   complete medical reports indicated Plaintiff was capable of some of the requirements of light

9   work.  *See* AR 441-45, 535-39.  It is important to note that it is well-settled in this circuit that

10  while the state's workers' compensation guidelines are not conclusive in a social security case,

11  "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'"  *Macri v. Chater*,

12  93 F.3d 540, 544 (9th Cir. 1996) (citing *Desrosiers v. Secretary of Health and Human Services*,

13  846 F.2d 573, 576 (9th Cir. 1988) & quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

14  1982)).

15         Dr. Weiss's March 16, 2005, Psychological Disability Evaluation supports the ALJ's

16  determination because ALJ Belli accounted for Dr. Weiss's finding that Plaintiff was capable of

17  understanding, remembering, and carrying out simple, uncomplicated one or two-step

18  instructions, and that there were mild limitations regarding concentration and attention.  AR 505-

19  06.  Dr. Weiss is an examining physician whose findings are based upon independent clinical

20  findings, and thus are substantial evidence.  *Orn*, 496 F.3d at 632.

21         Dr. Pong's RFC assessment that Plaintiff was capable of light work is supported by his

22  review of the record, including the reports prepared by Plaintiff's treating physician.  Dr. Pong's

23  opinion is properly considered substantial evidence as a result.  *Andrews v. Shalala*, 53 F.3d

24  1035, 1041 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d at 751.

25  //

26  //

27  //

28  //

### E.   *Additional Evidence*

Plaintiff has appended additional evidence, including medical evidence, to her opening brief for this Court's consideration.  (*See* Exhibits A-G to Doc. 17.)  Defendant objects to the new evidence offered by Plaintiff because it is outside the relevant time period, or is immaterial. (Doc. 18 at 11-12.)

Pursuant to the provisions of Title 42 of the United States Code section 405(g), as amended in 1980, a case may be remanded to the Secretary if the new evidence submitted is material, and there is good cause for the failure to incorporate it into the record.  In order to be "material," the new evidence must be probative of the claimant's condition as it existed during the relevant time period -- on or before the administrative hearing.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him."  *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984). The good cause requirement is satisfied if the claimant could not have obtained the medical evidence at the time of the administrative proceeding, even though the evidence surfaces after the Secretary's final decision.  *See Embry v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, 734 F.2d at 1380.

A plaintiff may also fail to demonstrate good cause for not submitting the evidence earlier.  Simply submitting a more favorable medical report obtained well after the ALJ's decision does not establish good cause.  *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Rather, the claimant must establish good cause for not seeking the expert's opinion prior to the denial of the claim.  *Id.*  Where a claimant believes that such evidence supports a claim for disability, the proper procedure for submitting the evidence is in the context of a new application for benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

In this case, as Defendant points out, some of the new evidence offered by Plaintiff is outside the relevant time period.  Thus, the evidence will not be considered.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d at 511.  With regard to the documents that

fall within the relevant time period, Plaintiff here cannot establish that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human Services*, 734 F.2d at 1380.  There is nothing in the ALJ's decision that would lead this Court to believe that had the ALJ considered this new evidence, he would have come to a different conclusion.  Lastly, those exhibits referencing Plaintiff's work with a cheer team at Modesto Junior College are not considered for the reasons provided in subheading B, *ante*, and the information concerning Plaintiff's mother's death is immaterial.

## F.   *VE's Testimony*

Plaintiff references a concern that the vocational expert who provided testimony was not the same vocational expert who sat through an earlier hearing.  She questions whether this was error.  (Doc. 11.)

There was no error here.  A VE is consulted to provide information to the ALJ regarding what jobs, if any, exist in the national economy that a claimant may be able to perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d at 577.  Pursuant to federal regulation, it is within the ALJ's discretion to make use of a vocational expert in a disability determination.  20 C.F.R. § 404.1566(e).  Thus, which VE to employ would be part and parcel of the ALJ's discretion.  Moreover, while Plaintiff is correct in indicating that vocational consultant Mr. Steven Schmidt was present for testimony given at a previous hearing, the ALJ properly stopped that hearing to develop the record[7] regarding Plaintiff's claim of depression.  AR 571-72. Thus, Mr. Schmidt did not testify nor was he presented with hypothetical situations by the ALJ, as was VE Moranda.  In sum, the ALJ did not err by calling on the services of VE Moranda at the final administrative hearing.

---

[7]When the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.*

1

## **RECOMMENDATION**

2       Based on the foregoing, the Court finds that the ALJ's decision is supported by

3  substantial evidence in the record as a whole and is based on proper legal standards.

4  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

5  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

6  Defendant Michael J. Astrue and against Plaintiff Paula Marie Kennedy.

7       These findings and recommendations will be submitted to the Honorable Oliver W.

8  Wanger pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

9  being served with these findings and recommendations, the parties may file written objections

10  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

11  and Recommendations."  The parties are advised that failure to file objections within the

12  specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d

13  1153 (9th Cir. 1991).

14

15

16    IT IS SO ORDERED.

17  **Dated:   October 13, 2009**        **/s/ Gary S. Austin**

                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28